**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JUANITA L. McLAUGHLIN, | ) | CASE NO. 5:16-cv-01512 |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| v. | ) | MAGISTRATE JUDGE DAVID A. RUIZ |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| *Acting Comm'r of Social Security*, | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Defendant. | ) | |

Plaintiff, Juanita L. McLaughlin (hereinafter "Plaintiff"), challenges the final decision of Defendant Nancy A. Berryhill, Acting Commissioner of Social Security (hereinafter "Commissioner"), denying her applications for a Period of Disability ("POD"), Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381 *et seq*. ("Act"). This court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and Recommendation. For the reasons set forth below, the Magistrate Judge recommends that the Commissioner's final decision be AFFIRMED.

## I. Procedural History

On August 8, 2012 and August 28, 2012, Plaintiff filed applications for POD, DIB, and SSI, alleging a disability onset date of May 7, 2011. (Transcript ("Tr.") 134, 238-265). The application was denied initially and upon reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 55-58, 115-133). Plaintiff participated in the hearing on October 8, 2014, was represented by counsel, and testified. (Tr. 28-54). A vocational expert ("VE") also participated and testified. *Id*. On December 3, 2014, the ALJ found Plaintiff not disabled. (Tr. 22). On April 15, 2016, the Appeals Council declined to review the ALJ's decision, and the ALJ's decision became the Commissioner's final decision. (Tr. 1-3). On June 17, 2016, Plaintiff filed a complaint challenging the Commissioner's final decision. (R. 1). The parties have completed briefing in this case. (R. 14 & 16-1).

Plaintiff asserts the following assignments of error: (1) the ALJ erred by failing to fully credit her testimony; (2) the ALJ erred by giving little weight to the opinions of two physicians of record; (3) the ALJ erred by not crediting the testimony of her friend; and, (4) the ALJ erred by relying on the testimony of the VE.[1] (R. 14, PageID# 710-712).

## II. Evidence

### A. Personal and Vocational Evidence

Plaintiff was born in October 1974 and was 36-years-old on the alleged disability onset date. (Tr. 238). She has at least a high school education and is able to communicate in English.

---

[1] Plaintiff's assignments of error are not clearly delineated. The separation into these four assignments of error is the court's attempt to bring clarity to Plaintiff's brief. (R. 14, PageID# 710-712).

(Tr. 21). She has past relevant work as a "wire harness assembler and inspector – hand packager." *Id*.

**B. Relevant Medical Evidence**[2]

### 1. Treatment Records

Prior to her May 7, 2011 alleged onset date, Plaintiff was seen on January 14, 2011, at the Community Mental Health Center. (Tr. 445). She reported feeling "depressed all the time" for years, as well as being prescribed Effexor "on and off" for ten years. *Id*.

On September 28, 2011, an MRI of Plaintiff's lumbar spine revealed no spondylolisthesis or spondylolysis, no compression fracture; normal morphology and signal, no spinal stenosis or neural foraminal narrowing; and minimal disc bulging at L5-S1. (Tr. 520).

On December 7, 2011, Plaintiff was seen by Mark J. Pellegrino, D.O., complaining of chronic pain. (Tr. 475). On a scale of 0 to 10, she rated her pain at level 8. *Id*. Plaintiff complained of joint pain, swelling, stiffness, and cramps. (Tr. 476) She denied global weakness or myalgia, focal weakness, neck pain, or back pain. *Id*. She had a mild bilateral antalgic gait, and no focal neurological deficits or swelling. *Id*. Dr. Pellegrino refilled her prescription for Percocet. *Id*. Throughout 2012, Plaintiff visited Dr. Pellegrino every other month, with similar treatment notes. (Tr. 483-494, 571-576).

In November of 2012, Plaintiff presented to Dr. Maskarinec complaining of a recent worsening of her pain. (Tr. 534). Plaintiff demonstrated spasms and decreased range of motion of the cervical spine in all directions. (Tr. 536).

---

[2] The recitation of the evidence is not intended to be exhaustive. It includes only those portions of the record cited by the parties in their briefs *and* also deemed relevant by the court to the assignments of error raised.

On January 1, 2013, Plaintiff presented to Dr. Pellegrino complaining of chronic pain. (Tr. 577). She reported that medication improved her pain levels. *Id*. Plaintiff had a normal gait, normal range of motion of the cervical, thoracic, and lumbar spine. (Tr. 578). Plaintiff received a Ketorolac injection. (Tr. 579). At her next visit two months later, Plaintiff reported a 50 percent reduction in pain from the Ketorolac injection, but relief lasted for only four days before the pain returned to normal pre-injection levels. (Tr. 581). She again had a normal gait and range of motion. (Tr. 583).

**2. Medical Opinions Concerning Plaintiff's Functional Limitations**

One June 8, 2011, John Maskarinec, D.O., completed a certification form under the Family and Medical Leave Act ("FMLA") indicating that Plaintiff's condition commenced on June 3, 2011, and that he had treated Plaintiff on June 7, 2011. (Tr. 286-289). He checked a box indicating that Plaintiff was unable to perform her job functions. (Tr. 287). He stated that Plaintiff suffered from a mood disorder, which causes anxiety. *Id*. He noted that Plaintiff was not incapacitated for a single, continuous period of time, and that follow-up treatment would not necessitate a reduced schedule or part-time work. (Tr. 288). Her condition would also not cause periodic flare-ups preventing Plaintiff from performing her job functions. *Id*.

On June 28, 2011, Dr. Maskarinec completed a short-term disability claim form indicating that Plaintiff had been diagnosed with depression, causing symptoms of "fatigue, quiet, stressed." (Tr. 294). He noted that Plaintiff had not been treated in an emergency room or confined to a hospital. *Id*. He did not offer any opinion concerning Plaintiff's physical functional limitations, marking "N/A" on that portion of the questionnaire. *Id*. He opined that Plaintiff was "guarded" in her abilities to use "judgment / decision making," "deal with work stresses," "function independently," "concentration / attention span," "emotional liability," and "caring for

self / family." (Tr. 295).

On July 19, 2011, Plaintiff was seen by Dr. Pellegrino for an examination. (Tr. 466). He reviewed her health questionnaire, past history, and review of systems checklist. *Id.* His impression was fibromyalgia and associated chronic pain syndrome and central pain syndrome. (Tr. 467). Dr. Pellegrino opined that it would be very difficult for Plaintiff "to sustain her specific job where she does a lot of standing and repetitive reaching, bending and lifting. In my opinion she would have permanent difficulties with these types of job abilities …." (Tr. 467).

On October 13, 2012, Plaintiff was seen by Gary J. Sipps, Ph. D., for a psychological examination for the purpose of evaluating her disability claim. (Tr. 552-557). Plaintiff reported that she first participated in psychological/psychiatric treatment about one year prior to the exam, but discontinued treatment after six months due to lack of insurance. (Tr. 553). Plaintiff indicated that her childhood had been satisfactory, and she maintains good relationships with her parents and siblings. (Tr. 552). Later in the exam, Plaintiff reported that she had experienced anxiety for four years, which she attributed to her bad childhood and physically abusive father. (Tr. 554). On mental status examination, Plaintiff had good grooming/hygiene, was dressed appropriately, had 100 percent intelligible speech with no looseness of association or tangentiality, had overt signs of anxiety, did not display any delusional or paranoid thinking, was oriented x 3, had average intellectual ability, and no suicidal ideation for the past three years. (Tr. 554). Regarding activities of daily living, Plaintiff reported that she read, watched television, and crocheted. (Tr. 553). She routinely attempts to wash the dishes, cook, clean the floor when she is able, and does laundry with assistance. *Id.* She maintains social interaction with her boyfriend, talks by phone with a friend weekly, and speaks with her mother and her son when they are available. *Id.* Plaintiff successfully completed a serial three task through six consecutive correct responses and

could recall three of three objects after a five-minute period. (Tr. 554). She successfully recalled six digits forwards and four backwards and provided good responses to three of three analogies. *Id*. Dr. Sipps diagnosed depressive disorder NOS in partial remission with medication, and assigned a Global Assessment of Functioning ("GAF") score of 53.[3] Dr. Sipps opined that Plaintiff was *not limited* in her ability to understand, remember, and carry out instructions; *not limited* in her ability to perform simple tasks; *limited* in her ability to direct her attention and concentration effectively to multistep tasks based on her function report; *not limited* in her ability to respond appropriately to supervision and to coworkers in a work setting; and, *limited* in her ability to respond appropriately to work pressures in a work setting. (Tr. 555-556).

On October 13, 2017, state agency physician Dr. James Cacchillo, D.O., reviewed the medical records and opined that, in an 8-hour workday, Plaintiff could occasionally lift/carry 20 pounds; frequently lift/carry 10 pounds; stand and/or walk for 6 hours; sit for 6 hours; frequently climb ramps/stairs, stoop, kneel, crouch, and crawl; and, occasionally climb ladder, ropes or scaffolds. (Tr. 71-72).

On November 20, 2012, state agency psychologist Karla Voyten, Ph.D., reviewed Plaintiff's record and determined that Plaintiff's affective disorder was non-severe. (Tr. 69-70). Dr. Voyten opined that Plaintiff was mildly limited in her activities of daily living; maintaining

---

[3] The GAF scale reports a clinician's assessment of an individual's overall level of functioning. *Diagnostic & Statistical Manual of Mental Disorders*, 32-34 (American Psychiatric Ass'n, 4th ed. revised, 2000) ("DSM-IV"). An individual's GAF is rated between 0-100, with lower numbers indicating more severe mental impairments. A GAF score between 51 and 60 indicates *moderate* symptoms or moderate difficulty in social, occupational, or school functioning. A person who scores in this range may have a flat affect, occasional panic attacks, few friends, or conflicts with peers and co-workers. *DSM-IV* at 23. An update of the DSM eliminated the GAF scale because of "its conceptual lack of clarity ... and questionable psychometrics in routine practice." *See Diagnostic and Statistical Manual of Mental Disorders* (DSM-5) at 16 (American Psychiatric Ass'n, 5th ed., 2013).

social functioning; and, maintaining concentration, persistence, or pace. (Tr. 70). She had no repeated episodes of decompensation of an extended duration. *Id*. She noted that Plaintiff's statement as to her symptoms was only partially credible due to inconsistencies in her reported activities of daily living. (Tr. 71).

After the hearing, on October 9, 2014, the ALJ solicited an opinion from a psychological medical expert ("ME"), Mary Eileen Buban, Psy. D., who was provided with the medical records on file. (Tr. 637). On October 30, 2014, Dr. Buban opined that Plaintiff had *no limitations* in her ability to understand and remember simple instructions, carry out simple instructions, and to make judgments on simple work-related decisions; had *mild* limitations in her ability to understand and remember complex instructions, carry out complex instructions, and to make judgments on complex work related decisions; *mild* limitations in her ability to interact appropriately with the public, interact appropriately with the supervisor(s), and interact appropriately with co-workers; and, *moderate* limitations in her ability to respond appropriately to usual work situations and to changes in a routine work setting. (Tr. 638-639).

**C. Relevant Hearing Testimony**

At the October 4, 2014 hearing, Plaintiff testified as follows:

- She lives with her boyfriend Vinny Jarvis, her parents, and adult son. (Tr. 34). Her mother and boyfriend do the cooking and cleaning. (Tr. 37, 40-41).

- She can drive, but avoids doing so unless it is necessary. Turning her neck to the side causes pain, and her arms hurt as well. (Tr. 34-35).

- She was fired from her last job for missing too much work, because she could not get out of bed. (Tr. 35).

- She stopped crocheting because her arms, back, and mood have all deteriorated. (Tr. 37).

- She keeps to herself due to her mood changes. (Tr. 38).

- She tries to read, but has difficulty concentrating and remembering things. (Tr. 38).

- She feels she cannot work due to poor range of motion, poor memory, and absenteeism caused by pain and depression. She cannot lift her arms above her shoulders to do her hair. (Tr. 39).

- She tried physical therapy, but it did not help. She does not walk much. Sitting for long periods also gives her "really bad knots everywhere." (Tr. 45).

Plaintiff's boyfriend, Vinny Jarvis, also testified. (Tr. 45). He indicated that Plaintiff cannot clean or even help with simple chores, such as laundry. (Tr. 46). She no longer helps with the bills. *Id*. She cannot concentrate. *Id*. As an example, he indicated he might ask her to start a load of laundry, but she will forget. *Id*. She gets painful knots on her body that are not visible, but can be felt to the touch. (Tr. 47).

The VE testified that Plaintiff's past relevant would be categorized as an inspector, hand packager, Dictionary of Occupational titles ("DICOT") 559.687-014, light exertional, unskilled with an SVP of 2, and wire harness assembler, DICOT 728.684-010, light exertional, semiskilled with an SVP of 3. (Tr. 33-34). The ALJ posed the following hypothetical question to the VE:

> But consider a claimant similar in age and education who could lift 10 pounds frequently, 20 pounds occasionally, carry 10 pounds frequently, 20 pounds occasionally, push 10 pounds frequently, 20 pounds occasionally, pull 10 pounds frequently, 20 pounds occasionally, would need a sit/stand option. Could sit, stand and walk six out of an eight-hour day. As far as non-exertional limitations the work should be SVP: 1 to 3, that's unskilled to the low end of semiskilled, I previously defined unskilled and semiskilled. The work should be simple, routine tasks, no negotiation, no mediation, no arbitration, no heights, occasional social interaction with the public, coworkers and supervisors.

(Tr. 50).

The VE testified that such an individual would be unable to perform Plaintiff's past relevant work. (Tr. 50-51). Nevertheless, he identified several examples of light exertional jobs that such an individual could perform: inspector, hand packager, DICOT 559.687-074 (1,600 jobs locally,

6,000 in Ohio, 100,000 nationally); inspector, electrical or electronic parts,[4] DICOT 727.687-062; assembler, plastics, hospital products, DOT 712.687-010 (1,400 jobs locally, 5,000 in Ohio, 100,000 nationally). (Tr. 51).

Plaintiff's counsel inquired of the VE whether his "opinion take[s] into account someone who can't show up to work because of depression?" (Tr. 52). The VE responded that it was not his place to evaluate what a claimant can or cannot do, but rather to respond to hypothetical questions posed by the ALJ. *Id.*

### III. Disability Standard

A claimant is entitled to receive benefits under the Social Security Act when he/she establishes disability within the meaning of the Act. 20 C.F.R. § 404.1505 & 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when she cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a) and 416.905(a); 404.1509 and 416.909(a).

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process. 20 C.F.R. § 404.1520(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Second, the claimant must show that she suffers from a medically determinable "severe impairment" or combination of impairments in order to warrant a finding of disability.

---

[4] The VE did not identify the number of available jobs for this particular job. (Tr. 51).

20 C.F.R. §§ 404.1520(c) and 416.920(c). A "severe impairment" is one that "significantly limits ... physical or mental ability to do basic work activities." *Abbott*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment (or combination of impairments) that is expected to last for at least twelve months, and the impairment(s) meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d). Fourth, if the claimant's impairment(s) does not prevent her from doing past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment(s) does prevent her from doing past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g) and 416.920(g), 404.1560(c).

## IV. Summary of the ALJ's Decision

The ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2016.

2. The claimant has not engaged in substantial gainful activity since May 7, 2011, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.).

3. The claimant has the following severe impairments: fibromyalgia, depression, degenerative disc disease, anxiety, and bipolar disorder (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she requires an option to alternate between sitting and standing. The work should be SVP 1-3, with simple, routine tasks.

There should be no negotiation, mediation, or arbitration. The claimant can have no exposure to heights. She can have occasional social interaction with the public, coworkers, and supervisors.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on October **, 1974 and was 36 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled,"" whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from May 7, 2011, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 13-22).

<h3 style="text-align:center">V. Law and Analysis</h3>

### A. Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. *Id.* However, the court

does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

**B.  Plaintiff's Assignments of Error**[5]

**1. Credibility of Plaintiff**

Plaintiff asserts that the ALJ did not give adequate weight to Plaintiff's testimony regarding the impact her impairments had on her daily activities and her ability to work. (R. 14, PageID# 710). Plaintiff points to her testimony that she lost her last job because she was unable to get out of bed due to pain and depression, her memory and concentration problems, difficulty driving,

---

[5]  As alluded to above, Plaintiff's assignments of error are not clearly delineated and are not altogether clear. They are also bereft of any citations to applicable laws, regulations, or precedent. (R. 14, PageID# 710-712). In the interest of justice, the court attempts to address the arguments to the extent raised, but it is not the court's function to develop an argument on Plaintiff's behalf. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones."); *accord Meridia Prods. Liab. Litig. v. Abbott Labs.*, 447 F.3d 861 (6th Cir. May 11, 2006); *Moore v. Comm'r of Soc. Sec.*, 573 Fed. App'x 540, 543 (6th Cir. 2014) (finding the argument that ""the ALJ failed to properly weigh the medical opinions of [her] treating physicians and psychiatrists" by "refusing to give [those opinions] ... controlling weight," was waived where the brief "does not elaborate or provide any further development of the argument").

her inability to perform household chores, difficulty with grooming and dressing, and an inability to lift her arms above her shoulders. *Id.*

According to Social Security Ruling ("SSR") 16-3p, 2016 WL 1119029 (Mar. 16, 2016), evaluating an individual's alleged symptoms entails a two-step process.[6] First, an ALJ must determine whether a claimant has a "medically determinable impairment" that could reasonably produce a claimant's alleged symptoms. *Id.* at *3. Once step one is satisfied, "[i]n considering the intensity, persistence, and limiting effects of an individual's symptoms," an ALJ must "examine the entire case record," including (1) the objective medical evidence; (2) an individual's statements about the intensity, persistence, and limiting effects of symptoms; (3) statements and other information provided by medical sources and other persons; and (4) any other relevant evidence in the individual's case record. SSR 16-3p, 2016 WL 1119029 at *4. When considering a claimant's own statements about the intensity, persistence, and limiting effects of her symptoms, an ALJ should evaluate "whether the statements are consistent with objective medical evidence and the other evidence."[7] *Id*

---

[6] SSR 16-3p supersedes SSR 96-7p, 1996 WL 374186 (July 2, 1996), which was in effect at the time of the January 28, 2015 hearing. While there is not unanimity on the issue, the Court applies SSR 16-3p retroactively as it agrees with the rationale of another district court that has addressed the issue. *See Mendenhall v. Colvin*, No. 3:14-CV-3389, 2016 WL 4250214, at *3 (C.D. Ill. Aug. 10, 2016) ("where new rules merely clarify unsettled or confusing areas of the law, retroactive application is proper" and finding that "SSR 96-7p and SSR 16-3p are substantially similar"); *accord Howard v. Berryhill*, No. 3:16-CV-318-BN, 2017 WL 551666 at *7 (N.D. Tex. Feb. 10, 2017) ("having reviewed the old and new rulings, it is evident that the change brought about by SSR 16-3p was mostly semantic."); *contra Murphy v. Comm'r of Soc. Sec.*, No. 1:15-CV-126-SKL, 2016 WL 2901746, at n. 6 (E.D. Tenn. May 18, 2016) (declining to apply SSR 16-3p retroactively).   By its very language, the primary purpose of SSR 16-3p appears to be the elimination of the term "credibility" from policy to clarify that an evaluation of symptoms does not constitute an examination of an individual's character. 2016 WL 1119029 at *1.

[7] Factors to be considered in evaluating a claimant's symptoms include: (1) a claimant's daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3)

However, "an ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003); *accord Sorrell v. Comm'r of Soc. Sec.*, 656 Fed. App'x 162, 173 (6th Cir. 2016). "[C]redibility determinations with respect to subjective complaints of pain rest with the ALJ." *Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987); *Villarreal v. Sec'y of Health & Human Servs.*, 818 F.2d 461, 463 (6th Cir. 1987) ("[T]olerance of pain is a highly individual matter and a determination of disability based on pain by necessity depends largely on the credibility of the claimant," and an ALJ's credibility finding "should not lightly be discarded.")(citations omitted).

While an ALJ's credibility determinations concerning a claimant's subjective complaints are left to his or her sound discretion, those determinations must be reasonable and supported by evidence in the case record. *See, e.g., Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 249 (6th Cir. 2007). "In evaluating an individual's symptoms, it is not sufficient for [an ALJ] to make a single, conclusory statement that 'the individual's statements about his or her symptoms have been considered' or that 'the statements about the individual's symptoms are (or are not) supported or consistent.'" SSR 16-3p, 2016 WL 1119029 at *9. Rather, an ALJ's "decision must contain *specific reasons* for the weight given to the individual's symptoms … and be *clearly articulated so the individual and any subsequent reviewer can assess* how the adjudicator evaluated the individual's symptoms." *Id.* (emphasis added). "While in theory [a court] will not 'disturb' an

---

factors that precipitate and aggravate the symptoms; (4) type, dosage, effectiveness, and side effects of any medication used to treat the pain or symptoms; (5) treatment other than medication; (6) measures other than treatment used to alleviate pain or symptoms; and (7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. SSR 16-3p, 2016 WL 1119029 at *7.

ALJ's credibility determination without a 'compelling reason,' *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001), in practice ALJ credibility findings have become essentially 'unchallengeable.'" *Hernandez v. Comm'r of Soc. Sec.*, 644 Fed. App'x 468, 476 (6th Cir. 2016) (*citing Payne v. Comm'r of Soc. Sec.*, 402 Fed. App'x 109, 113 (6th Cir. 2010)).

In the present case, the ALJ acknowledged she must follow a two-step process to determine whether Plaintiff's symptoms, including pain, were credible. (Tr. 16). The ALJ found the first step was satisfied and states that Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms." (Tr. 16). The ALJ conducted a thorough discussion of Plaintiff's medical treatment. (Tr. 16-20). Thereafter, the ALJ addressed Plaintiff's alleged limitations as follows:

> With respect to the claimant's alleged limitations, I find such assertions only partially credible. She was non-compliant with treatment recommendations, including continuing to smoke despite the repeated advice of her physicians to quit. One would expect a person with the level of symptoms that she described would maintain faithful compliance with treatment recommendations. Furthermore, the record fails to confirm the level of dysfunction that she described. She said she stayed in bed all day at times, she struggled to raise her arms above her head, and she had severe memory deficits. However, the claimant was able to perform numerous daily activities as described above. Additionally, the medical records did not establish substantial upper extremity limitations and the claimant did not display severe objective memory deficits. Rather, mental health treatment providers appeared to rely largely on the claimant's subjective reports of memory deficits rather than conducting formal memory testing. Accordingly, the evidence as a whole does not show that the claimant was incapable of performing unskilled tasks at the light level.

(Tr. 20).

Plaintiff's brief fails to identify any deficiencies in the ALJ's analysis or develop any real argument, other than suggesting Plaintiff's statements were corroborated by the medical evidence. (R. 14, PageID# 710). Given the above described deference owed to an ALJ's credibility determinations, it is insufficient to simply argue that the ALJ erred by finding a claimant less than fully credible. Plaintiff has not identified a single alleged shortcoming in the

ALJ's credibility analysis. Plaintiff's argument is essentially nothing more than a disagreement with the outcome. As stated above in the standard of review, the court does not review the evidence *de novo* or make credibility determinations. *Brainard*, 889 F.2d at 681. As such, Plaintiff's first assignment of error is without merit.

### 2. Weight Ascribed to the Opinions of Drs. Pellegrino and Sipps

In the second argument, Plaintiff contends the ALJ erred by ascribing little weight to the opinions of Dr. Pellegrino and Dr. Sipps. (R. 14, PageID# 710-711).

With respect to Dr. Pellegrino, Plaintiff points to his July 19, 2011 assessment wherein he stated that she "continues to be bothered by significant pain and her pain is interfering with her ability to perform her job," that she would have difficulty performing a job with "a lot of standing and repetitive reaching, bending and lifting, and that she was permanently disabled from "these types of job[s]." (R. 14, PageID# 711, *citing* Tr. 466-467). Earlier in her brief, she suggests that Dr. Pellegrino was a treating source[8] and that it was incumbent upon the ALJ to give good reasons for the weight assigned to the opinions expressed in the July 2011 assessment. (R. 14, PageID# 706).

---

[8] Pursuant to new regulations effective as of March 27, 2017, 20 C.F.R. §§ 404.1527 & 416.927 set forth the rules for evaluating opinion evidence, both medical and nonmedical, for claims filed *before* that date. Conversely, 20 C.F.R. §§ 404.1520c & 416.920c set forth the rules for evaluating such evidence for claims filed *on or after* March 27, 2017. The latter regulations, not applicable to the present case, eliminate the term "treating source," as well as what is customarily known as the "treating source rule." *See also Revisions to Rules Regarding the Evaluation of Medical Evidence*, 81 FR 62560 at 62573-62574 (Sept. 9, 2016) ("we would no longer give a specific weight to medical opinions … this includes giving controlling weight to medical opinions from treating sources … [and] [w]e would not defer or give any specific evidentiary weight, including controlling weight, to any … medical opinion, including from an individual's own healthcare providers.") Rather, for cases filed prior to the effective date, the Social Security Administration "will continue to apply [its] current rules for evaluating evidence from a treating source …." *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 FR 5844 at 5861 (Jan. 18, 2017).

First, the court does not agree that Dr. Pellegrino qualified as a treating source at the time he rendered these opinions on July 19, 2011. Plaintiff does not cite any treatment notes of record by Dr. Pellegrino that predate the July 19, 2011 opinion, and this court's own review has not uncovered any treatment in the record by Dr. Pellegrino before that date. The July 19, 2011 report itself, which is actually a letter from Dr. Pellegrino to Dr. Maskarinec, strongly suggests that it marked Dr. Pellegrino's first encounter with Plaintiff, because it thanks Dr. Maskarinec for the referral and "the opportunity to see [Plaintiff]."[9] (Tr. 466-469). Significantly, the ALJ himself did not specify that he considered Dr. Pellegrino a treating source at the time the opinion was rendered. (Tr. 19). Dr. Pellegrino continued to see Plaintiff on a rather regular basis after he rendered the opinions in the July 19, 2011 letter, and likely became a treating source sometime thereafter. However, "subsequent visits to [a physician] are irrelevant in determining whether the [an] opinion was that of a treating physician *when it was completed*." *Witnik v. Colvin*, No. 14cv-257, 2015 WL 691329 at *5 (N.D. Ohio Feb. 18, 2015) (White, M.J.) (emphasis added). "The question is whether [the claimant] had the ongoing relationship with [the physician] to qualify as a treating physician *at the time he rendered his opinion*." *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 506 (6th Cir. 2006) (emphasis added). In *Kornecky*, the Sixth Circuit declined to find a treating physician relationship, noting that visits to a physician *after* an assessment had been made "could not retroactively render [the doctor] a treating physician at the time of the assessment." 167 Fed. App'x at 506 n.10; *cf. Daniels v. Comm'r of Soc. Sec.*, 152 Fed. App'x 485 (6th Cir. 2005) (finding that a physician who only saw the claimant twice was not a treating physician despite the ALJ referring to the physician as such).

---

[9] A questionnaire completed by Plaintiff indicates that her first treatment with Dr. Pellegrino was on December 7, 2011. (Tr. 312).

The opinion of a non-treating but examining source is not subject to the rigors of the treating physician rule. Other courts have determined that "the regulation requiring an ALJ to provide 'good reasons' for the weight given a treating physician's opinion does not apply to an ALJ's failure to explain his favoring of one non-treating source's opinion over another." *Williams v. Colvin*, 2015 WL 5165458 at *5 (N.D. Ohio, Sept. 2, 2015) (*citing Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x 496 (6th Cir. 2006); *accord Chandler v. Comm'r of Soc. Sec.*, 2014 WL 2988433 at *8 (S.D. Ohio, July 1, 2014) ("the ALJ is not required to give 'good reasons' for rejecting a nontreating source's opinions in the same way as must be done for a treating source"). While a claimant may disagree with the ALJ's explanation as to why little weight was assigned to a non-treating medical source, such a disagreement with the ALJ's rationale does not provide a basis for remand. *See, e.g., Steed v. Colvin*, 2016 WL 4479485 (N.D. Ohio Aug. 25, 2016) (McHargh, M.J.).

Instead, an ALJ, when arriving at the RFC assessment, "must always consider and address medical source opinions [and] [i]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p, 1996 WL 374184 at *7 (July 2, 1996); *see also Puckett v. Colvin*, 2014 WL 1584166 at *9 (N.D. Ohio April 21, 2014) (Vecchiarelli, M.J.) (explaining that, although the ALJ was *not* required to evaluate opinions of consultative examiners with the same standard of deference as would apply to an opinion of a treating source, he was required to "acknowledge that [the examiners'] opinions contradicted his RFC finding and *explain* why he did not include their limitations in his determination of Plaintiff's RFC") (emphasis added).

The ALJ offered the following assessment of Dr. Pellegrino's July 2011 opinion:

I also do not give controlling weight to Dr. Pellegrino's opinion. He stated that the

claimant could not do "a lot of standing and repetitive reaching, bending, or lifting", but he did not describe what would constitute "a lot of standing" or how he defined "repetitive." Moreover, such findings were based generally on the claimant's subjective complaints. While I have considered the claimant's ongoing pain, the lack of neurological deficits or inflammation suggest that she was capable of more than Dr. Maskarinec[10] reported. Moreover, the claimant did not exhibited [sic] substantial ongoing weakness or upper extremity restrictions. Accordingly, I give his opinion only partial weight.

(Tr. 19).

Plaintiff fails to develop any meaningful argument suggesting that the ALJ's decision failed to satisfy the explanation requirement. In fact, given the vagueness of Dr. Pellegrino's statements, it is highly questionable whether it even conflicts with the RFC for light work, which requires, at most, six hours of standing/walking in an eight-hour workday.[11] Furthermore, a number of courts have found that a physician's opinion, where it is "premised to a large extent upon the claimant's own accounts of [her] symptoms and limitations may be disregarded where those complaints have been properly discounted." *Reinertson v. Barnhart*, 127 Fed. App'x 285, 290 (9th Cir. 2005) (internal quotation marks omitted) (*citing Morgan v. Comm'r of Soc. Sec.*, 169 F.3d 595, 602 (9th Cir. 1999)); *see also Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 391 (6th Cir. 2004) (finding that ALJ did not err by disregarding the opinion of a treating physician where

---

[10] This reference to Dr. Maskarinec appears to be a typographical error, as he seems to have treated Plaintiff primarily for her mental impairments.

[11] Social Security Ruling (SSR) 83-10 states that a "full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." SSR. 83-10, 1983 WL 31251 at *6 (1983). The ruling "does not explicitly preclude light work for an individual who cannot stand or walk for 6 hours of an 8-hour workday." *Sulecki v. Comm'r of Soc. Sec.*, No. 1:13-CV-1597, 2014 WL 2434631 at *14 (N.D. Ohio May 29, 2014) (Armstrong, M.J.) It explains that "since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off or on, for a total of approximately 6 hours of an 8-hour workday. Sitting may occur intermittently during the remaining time." SSR 83-10, 1983 SSR LEXIS 30, 1983 WL 31251 at *6.

the limitation in question appeared to be based not upon his own medical conclusion, but upon the conclusion of a different doctor and the claimant's self-assessment); *Tate v. Comm'r of Soc. Sec.*, 467 Fed. App'x 431, 433 (6th Cir. 2012) (finding no error where the ALJ discounted a treating doctor's opinion because there were substantial gaps in treatment and where the doctor's assessment appeared to be based on claimant's subjective complaints without sufficient support from objective clinical or neurological findings); *see also Poe v. Comm'r of Soc. Sec.*, 342 Fed. Appx. 149, 156 (6th Cir. 2009) (finding treating physician's opinion was not entitled to deference where it was based on claimant's subjective complaints); *accord Rogers v. Astrue*, 2012 WL 639473 at *4 ("Simply recording Plaintiff's subjective complaints is not objective medical data....") Because the ALJ determined that Plaintiff was not credible, a determination that, as discussed above, is entitled to considerable deference, it was not unreasonable for the ALJ to discount a medical source opinion that was primarily based on Plaintiff's self-reports of her symptoms.

Turning to Dr. Sipps, who performed a one-time consultative psychological evaluation, Plaintiff appears to argue that the ALJ erred by not fully crediting his opinion. (R. 14, PageID# 711). First, it should be noted that the ALJ did not reject Dr. Sipps's opinions, but ascribed them partial weight. (Tr. 19). The Commissioner argues that RFC adopted by the ALJ is actually consistent with the Dr. Sipps's opinion. (R. 16, PageID# 737-738). The ALJ addressed Dr. Sipps's opinion as follows:

> Dr. Sipps assigned the claimant a GAF of 53 and he said that the claimant was not impaired in her ability to follow instructions (6F/4). Dr. Sipps further reported that the claimant could perform simple tasks, but her concentration limited her ability to perform multi-step tasks based on her reports of poor memory (6F/4). Dr. Sipps concluded that the claimant had normal social functioning and limited ability to respond to work stress (6F/5). I grant partial weight to Dr. Sipps' assessment. The balance of the evidence shows that while the claimant had

> ongoing mental symptoms, she could perform unskilled tasks. Indeed, she had
> generally logical thoughts and cooperative behavior. However, given the
> claimant's poor stress tolerance, I included work environment and social
> limitations in the residual functional capacity.

(Tr. 19).

Plaintiff's brief identifies two specific limitations assessed by Dr. Sipps: (1) that Plaintiff's difficulties with attention and concentration would limit her ability to perform multistep tasks effectively; and (2) that Plaintiff has limited coping skills and would be limited in her ability to respond appropriately to work pressures in a work setting. (R. 14, PageID# 711, citing Tr. 555-556). The RFC, however, does not require Plaintiff to perform multistep tasks. (Tr. 15). Rather Plaintiff is limited to "simple, routine tasks." *Id.* Dr. Sipps specifically opined that Plaintiff "would not appear limited in her ability to perform simple tasks." As such, the court finds no inconsistency here. Turning to Plaintiff's alleged limited coping skills, the RFC limits Plaintiff to jobs where there is "no negotiation, mediation, or arbitration," and only occasional social interaction with the public, coworkers, and supervisors." (Tr. 15). Plaintiff cites no authority suggesting that a limited ability to respond appropriately to work pressures in a work setting is work preclusive, nor does she explain how the RFC fails to adequately account for this limitation.

Finally, even if Dr. Sipps's opinion was construed as more limiting than the RFC, the ALJ adequately explained his reasons for not incorporating them. Reading the decision as a whole, the ALJ sufficiently explained why he was giving little weight to the consultative examiners. The explanation requirement is not as rigorous as the good reasons requirement of the treating physician rule. *See, e.g., Moscorelli v. Colvin*, No. 1:15cv1509, 2016 WL 4486851 at **3-4 (N.D. Ohio Aug. 26, 2016)* (Lioi, J.) (observing that a thin explanation that would not constitute a good reason for discounting a treating source's opinion may, nevertheless, satisfy the

explanation requirement for a non-treating source). First, the ALJ explained that the evidence showed Plaintiff retained the ability to perform unskilled tasks, and generally had logical thoughts and cooperative behavior. (Tr. 19). Second, the ALJ expressly ascribed "great weight" to the opinion of an ME, Dr. Buban, to whom the ALJ proffered post-hearing interrogatories.[12] (Tr. 20). It is true, that more weight is typically afforded to examining sources, such as Dr. Sipps, than the opinion of a non-examining source. *See* 20 C.F.R. § 416.927(c)(1). Nevertheless, "it is not a *per se* error of law, as [claimant] suggests, for the ALJ to credit a nonexamining source over a nontreating source." *Norris v. Comm'r of Soc. Sec.*, 461 Fed. App'x 433, 439 (6ᵗʰ Cir. 2012); *accord Moscorelli*, 2016 WL 4486851 at *3.

A recent decision from the Southern District of Ohio, *Lowther v. Comm'r of Soc. Sec.*, No. 2:15-cv-3010, 2016 WL 7111604 at *7 (S.D. Ohio, Dec. 7, 2016), *adopted by* 2017 WL 25551 (Jan. 2, 2017), reasoned that where a longitudinal picture of a plaintiff's mental health was lacking, each psychological medical source opinion necessarily was based on a limited amount of evidence." *Lowther*, 2016 WL 7111604 at *7. "Considering all of this," the court reasoned, "the ALJ's decision to place more weight on the conclusions" of a non-examining State Agency psychologist, who reviewed the record, than those of two consultative examining psychologists "was within the permissible 'zone of choice' afforded to an ALJ." *Id.* (citations omitted). This court agrees with the sound reasoning of the *Lowther* decision, and finds that the ALJ did not err by assigning greater weight to the non-examining opinion of Dr. Buban, who had the benefit of reviewing the *entire* medical record—including the opinions of Dr. Sipps as well as any treating

---

[12] Unlike Dr. Sipps, Dr. Buban found that Plaintiff had only *mild* limitations in her ability to understand, remember, and carry out complex instructions and only *moderate* limitations in her ability to respond appropriately to usual work situations and to changes in a routine work setting. (Tr. 638-639). These opinions are fully consistent with the RFC.

sources. (Tr. 20). Thus, to the extent the ALJ did not fully credit Dr. Sipps's opinions, he adequately explained why they were assigned less weight. As such, the second assignment of error is without merit.

### 3. Testimony of Plaintiff's Boyfriend

In the third assignment of error, Plaintiff takes issue with the ALJ's decision to ascribe little weight to the testimony of her boyfriend, Vinny Jarvis. (R. 14, PageID# 711).

Pursuant to 20 C.F.R. §§ 404.1513(a)(4) & 416.913(a)(4), Mr. Jarvis's testimony would be categorized as "[e]vidence from nonmedical sources," which includes "any information or statement(s) from a nonmedical source (including you) about any issue in your claim. We may receive evidence from nonmedical sources either directly from the nonmedical source or indirectly, such as from forms we receive and our administrative records."[13] An ALJ "generally should explain the weight given to opinions from these [nonmedical] sources or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case…." 20 C.F.R. §§ 404.1527(f)(2) & 416.927(f)(2).

Even before the regulation changes, ALJs were required to "explain the weight given to opinions for these 'other sources' … [b]ut other-source opinions are not entitled to any special deference." *Hill v. Comm'r of Soc. Sec.*, 560 Fed. App'x 547, 550 (6th Cir. 2014) (*quoting* SSR 06-03p at 6). The ALJ addressed Mr. Jarvis's opinion as follows:

> At the hearing, the claimant's friend, Vinnie Jarvis, testified that he performed numerous household tasks for the claimant and she was less active over the past several years. Mr. Jarvis reported that the claimant had poor concentration, which prevented her from working. Mr. Jarvis also testified that the claimant's physical

---

[13] Prior to changes in the regulations that became effective March 27, 2017, such persons were categorized as "other sources."

conditions limited her ability to perform daily activities. I give little weight to Mr. Jarvis' assessment. I considered the probative value of his opinion pursuant to SSR 06-3p. By virtue of being the claimant's friend, he cannot be considered a disinterested third patty whose opinion would not tend to be colored by affection for the claimant and a natural tendency to agree with the symptoms and limitations the claimant alleges. Most importantly, significant weight cannot be given to Mr. Jarvis' opinion because it is not consistent with the preponderance of the opinions and observations by medical doctors in this case.

(Tr. 18).

The decision adequately explained the weight assigned to Mr. Jarvis's testimony, a non-medical source. Plaintiff's brief suggests that the testimony is actually consistent with the other medical evidence. Again, this argument is tantamount to a request for the court to conduct new credibility determinations and to reweigh the evidence. The assignment of error is without merit.

### 4. VE's Testimony

Finally, Plaintiff suggests the ALJ erred by ascribing "undue weight" to the testimony of the VE, because his testimony did not account for a limitation that the hypothetical individual would fail to go to work due to depression. (R. 14, PageID# 712).

At the fifth and final step of the disability analysis, if a claimant cannot perform her past relevant work, it must be determined whether the claimant can make an adjustment to other work in light of the claimant's RFC, age, education, and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). At this final step, the burden shifts to the Commissioner to prove the existence of a significant number of jobs in the national economy that a person with the claimant's limitations could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999); *accord White v. Comm'r of Soc. Sec.*, 312 Fed. App'x 779 (6th Cir. 2009). An ALJ's finding in this regard must be supported by substantial evidence (*i.e.* that the claimant has the vocational qualifications to perform specific jobs). *Workman v. Comm'r of Soc. Sec.*, 105 Fed.

App'x 794, 799 (6th Cir. 2004) (*citing Varley v. Sec'y of Health & Varley*, 820 F.2d 777, 779 (6th Cir. 1987)).

Testimony from a vocational expert—in response to a hypothetical question—may constitute substantial evidence that a claimant retains the ability to perform specific jobs, so long as the hypothetical question accurately accounts for a claimant's physical and mental impairments. *See, e.g., Pasco v. Comm'r of Soc. Sec.*, 137 Fed. App'x 828, 845 (6th Cir. 2005) (*citing Varley*, 820 F.2d at 779)). However, "[t]he rule that a hypothetical question must incorporate all of the claimant's physical and mental limitations does not divest the ALJ of his or her obligation to assess credibility and determine the facts." *Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. App'x 425, 429 (6th Cir. 2007) (*quoting Redfield v. Comm'r of Soc. Sec.*, 366 F. Supp.2d 489, 497 (E.D. Mich. 2005)). In other words, when an ALJ presents hypothetical question(s) to the VE, the ALJ is required to incorporate only those limitations that have been accepted as credible. *Griffeth*, 217 Fed. App'x at 429 (*citing Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993)).

Plaintiff's argument appears to be founded on her own testimony that she was terminated from previous employment due to absenteeism stemming from her depression. As discussed above, the ALJ did not find Plaintiff credible and there was no error in his credibility determination. As such, the ALJ was not obligated to include limitations that he had expressly rejected. Because Plaintiff has not identified any inaccuracy in the hypothetical question with respect to those limitations that the ALJ actually credited, the ALJ could reasonably rely on the VE's testimony. Plaintiff's final assignment of error is without merit.

## VI.  Conclusion

For the foregoing reasons, it is recommended that the Commissioner's final decision be

AFFIRMED.

s/ *David A. Ruiz*

David A. Ruiz
United States Magistrate Judge

Date: May 4, 2017

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the district court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).